UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| *In re* BLACK DIAMOND MINING COMPANY, LLC, et al., | ) ) ) ) | |
| Debtors. | ) ) | Civil No. 13-125-ART |
| | ) ) | |
| TAFT A. MCKINSTRY, *as Trustee of the BD Unsecured Creditors Trust*, | ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| IRA J. GENSER, et al., | ) ) ) | |
| Defendants. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Like a tornado, this bankruptcy case has a tendency to suck in everyone in its path. In this latest dispute, Black Diamond's lawyers at Jones Day are caught in the whirlwind. The trustee charged with pursuing claims against Black Diamond's former officers has moved for complete access to Jones Day's records regarding the company. Jones Day vigorously contests that demand, asserting work-product protection. But just as Jones Day may not invoke work-product protection directly against its own client, Black Diamond, the firm may not deny access to its client's successor-in-interest, the Trustee. The Court will thus grant the Trustee's motion for turnover.

## BACKGROUND

Jones Day represented Black Diamond Mining Company, LLC, and its affiliates (collectively, "Black Diamond") during the company's Chapter 11 restructuring. B.R. 413 at 1.[1] A comprehensive history of the restructuring appears in *Sergent v. McKinstry*, 472 B.R. 387, 391–95 (Bankr. E.D. Ky. 2012). For the purposes of this opinion, a brief portion of that history will suffice. Before Black Diamond's creditors took the company into bankruptcy, they forced it to hire Alvarez & Marsal North America, LLC ("A&M"), as a financial advisor. *Id.* at 392. Once in bankruptcy, Black Diamond brought on Ira Genser, a turnaround specialist from A&M, to manage the company and lead the Chapter 11 restructuring. *Id.* Genser in turn hired his A&M colleague, Larry Tate, as the company's Chief Financial Officer. *Id.* at 393. The global economic turmoil of 2008 unfortunately dashed any hopes of a successful reorganization. *Id.* Black Diamond accordingly shifted to liquidation. *Id.* A new bankruptcy plan created the BD Unsecured Creditors Trust (the "Trust") to liquidate some of the company's assets, including any causes of action Black Diamond might have against A&M, Genser, and Tate (collectively, the "A&M Parties"). *Id.* at 393–94. The Bankruptcy Court also appointed Taft A. McKinstry as the Trustee and as the representative of Black Diamond's estate. *Id.* at 394. The Trustee then sued the A&M Parties for mismanaging Black Diamond. *Id.* That suit is the primary subject of this case. *See* B.R. 1-2 at 6–28 (complaint).

During discovery, the Trustee concluded that Jones Day's client file for Black Diamond would assist her case. R. 25 at 8. Jones Day attorney Charles Oellermann testified

---

[1] As used in this opinion, "B.R." indicates a citation to the Bankruptcy Court adversary proceeding, *McKinstry v. Genser*, No. 11-07010 (Bankr. E.D. Ky.).

that Genser's management of Black Diamond was unwise only from the perspective of hindsight. R. 48 at 57–58. Oellermann admitted, however, that his firm had represented A&M in some matters.[2] *Id.* at 49. The Trustee believes Oellermann's testimony "demonstrated a clear bias for the A&M Parties," and she is confident that documents in the client file—including internal communications among Jones Day lawyers—will contradict his testimony, supporting her allegations of mismanagement. R. 25 at 11–13. Invoking attorney work-product protections, Jones Day refused to produce either the client file or internal emails regarding the firm's representation of Black Diamond. R. 26-1 at 13; *see also* B.R. 412 at 2. Rather than seek those documents via subpoena, the Trustee moved for a turnover order pursuant to 11 U.S.C. § 542(e).[3] *See* B.R. 399. With the exception of purely "administrative communications," B.R. 432 at 22, the Trustee specifically requested "all recorded information of and relating to the representation of Black Diamond, including

---

[2] The exact nature of the relationship between Jones Day and A&M is somewhat unclear from the record. Although Oellermann confirmed that Jones Day represented A&M, he also testified that he did not know the full extent of that representation. *See* R. 48 at 49. The Trustee emphasizes this testimony in her brief. *See* R. 25 at 11. At the hearing before the Bankruptcy Court, however, both parties took the position that A&M was not Jones Day's Client. The Trustee's attorney Grahmn Morgan expressly argued that "A&M is not their [Jones Day's] client." B.R. 432 at 29. And Jones Day's attorney Robert Hamilton went somewhat further, maintaining that "Alvarez was *never* Jones Day's client." *Id.* at 23 (emphasis added). Regardless, none of the parties' arguments hinges on whether Jones Day ever represented A&M. Jones Day invokes *its own* independent work-product protections, not protection derivative from its work for another client. Nor does Jones Day argue that the firm is adverse to the Trustee or Black Diamond because of its relationship with A&M (whatever that may be).

[3] The Trustee's initial decision to bring her § 542(e) action as a *motion* rather than as a *claim* in a separate adversary proceeding was procedurally improper. "The Bankruptcy Rules require that a party seeking a turnover file that request as an adversary proceeding rather than as a motion in another bankruptcy proceeding." *In re Camall Co.,* 16 F. App'x 403, 407 (6th Cir. 2001); *see also In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990). Nevertheless, that requirement is not jurisdictional but is merely a procedural rule that the parties may waive. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271–72 (2010) (describing the Bankruptcy Rules as "procedural rules adopted by the Court" that are "not jurisdictional" (internal quotation marks omitted)); *Matter of Vill. Mobile Homes, Inc.*, 947 F.2d 1282, 1283 (5th Cir. 1991) ("Compliance with the requisites of an adversary proceeding may be excused by waiver of the parties."). No party objected to the Bankruptcy Court resolving the Trustee's § 542(e) claim through motions practice, nor did Jones Day raise this issue on appeal.

books, documents, records and papers in any format or media, and expressly including [paper and electronic copies] of internal communications," B.R 399 at 9.

The Bankruptcy Court denied "every facet" of the Trustee's turnover motion, B.R. 432 at 44; *see also* B.R. 417, fearing that disclosure might chill open communication among a firm's attorneys. *See* B.R. 432 at 32–33. The Trustee appealed. Since that appeal, however, the Court withdrew the reference to the Bankruptcy Court for the entire adversary proceeding below. *See* R. 22. To simplify the proceedings, the parties agreed to convert the Trustee's appeal into a renewed turnover motion directly before this Court, mooting the appeal. *Id.* at 3. The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), and now considers the Trustee's renewed motion, R. 25.

## DISCUSSION

Section 542 of the Bankruptcy Code broadly authorizes turnover of a debtor's property to the trustee.[4] *See* 11 U.S.C. § 542. Subsection 542(e) goes a bit further than the debtor's property, however, empowering courts to order turnover of relevant documents: "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds [documents] relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e). Congress specifically designed this subsection "to restrict . . . the ability of

---

[4] At the hearing before the Bankruptcy Court regarding the Trustee's turnover motion, Jones Day suggested that "the trustee" as used in § 542(e) might not encompass trustees like McKinstry, presumably because she was appointed not as the trustee of Black Diamond's entire estate, but only of a trust holding a subset of the company's assets. B.R. 432 at 25. The firm waived any objection on that basis, however, by urging the bankruptcy judge to proceed without deciding the issue because the work-product question would arise anyway in response to an inevitable subpoena. *See id.* And Jones Day did not raise this issue in response to the Trustee's appeal. For the purposes of this opinion, the Court will thus assume without deciding that McKinstry qualifies as "the trustee" under § 542(e). Whether that is the correct reading of the statute is a difficult question for another day, when the parties involved present the issue.

4

accountants and attorneys to withhold information from the trustee." *CFTC v. Weintraub*, 471 U.S. 343, 351 (1985).

Setting aside the question of privilege for a moment, Jones Day's file regarding its representation of Black Diamond plainly falls within § 542's scope. That client file, according to most state courts, is Black Diamond's property. *See Swift, Currie, McGhee & Hiers v. Henry*, 581 S.E.2d 37, 39–40 (Ga. 2003) (discussing the split of authority and adopting the majority rule); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 689 N.E.2d 879, 881–83 (N.Y. 1997) (same). On that view, § 542 unquestionably would require turnover—and privilege would be irrelevant. *See* 11 U.S.C. § 542(a) ("[A]n entity . . . in possession, custody, or control . . . of property that the trustee may use . . . shall deliver [such property] to the trustee."). Regardless, the Court can avoid wading into the thorny debate over precisely who owns the client file. To be subject to turnover under § 542(e), documents and records need not actually belong to the debtor; they need only *relate to* the debtor's property or financial affairs. *In re McKenzie*, 716 F.3d 404, 419 (6th Cir. 2013). And that property includes intangible interests such as causes of action. *Whiting Pools*, 462 U.S. at 205 n.9; *Bauer v. Commerce Union Bank*, 859 F.2d 438, 440–41 (6th Cir. 1988). Black Diamond's outstanding claims against its former officers, the A&M Parties, are thus its property. As such, Jones Day's client file on Black Diamond "relate[s] to" the company's property within the meaning of § 542(e) because the records and intra-firm correspondence it contains are relevant to those claims. Jones Day does not dispute this conclusion, but rather invokes as a defense § 542(e)'s opening prepositional phrase: "[s]ubject to any applicable privilege."

5

Privilege indeed qualifies the Court's power under § 542(e) to order the turnover of relevant documents. Jones Day argues that the work-product doctrine is a "privilege" that obviates any duty to turn over Black Diamond's client file to the Trustee. *See* R. 26-1 at 19–26. The parties do not dispute that the term "privilege" as used in § 542(e) embraces work-product protection. For the sake of argument, because it makes no difference to the outcome, the Court will assume that is the correct reading of the statute.

**I.    Work-Product Doctrine**

Federal common law defines the scope of any relevant privilege since turnover pursuant to § 542(e) is a federal right: "[q]uestions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501); *see also In re Foster*, 188 F.3d 1259, 1264–65 (10th Cir. 1999) (holding federal common law governs debtor's privilege under § 542(e)). Whether work-product doctrine prevents the Court from ordering Jones Day to turn over Black Diamond's client file to the Trustee thus depends on federal law. And as the party asserting work-product protection, Jones Day bears the initial burden to show the doctrine applies.[5]  *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006).

---

[5] The Trustee bears the burden of establishing a right to turnover, but there is a split of authority surrounding its precise height. *See In re Meyers*, 616 F.3d 626. 629–30 (7th Cir. 2010); 9A Am. Jur. 2d Bankruptcy § 1643 (discussing the split). The pre-Code practice was "clear and convincing evidence." *See Maggio v. Zeitz*, 333 U.S. 56, 64 (1948); *Oriel v. Russell*, 278 U.S. 358 (1929). Some courts, however, employ a "preponderance of the evidence" standard, relying on the Supreme Court's more recent decision in *Grogan v. Garner*, 498 U.S. 279 (1991), which applied that lower bar to dischargeability exceptions. *See, e.g.*, *Meyers*, 616 F.3d at 620. The correct burden ultimately does not matter here, because the Court would come to the same conclusion under either evidentiary standard.

This is not an ordinary work–product dispute, however, because Jones Day effectively asserts protection against its former client. True, the Trust is not the full legal "successor" to Black Diamond, nor is the Trustee a fiduciary for the entire bankruptcy estate. *See Holywell Corp. v. Smith*, 503 U.S. 47, 55 (1992) (discussing the role of a liquidating trustee of a trust created pursuant to § 1123(a)(5)(B) of the Bankruptcy Code). And neither the Trust nor the Trustee is Jones Day's client. But the Trust *is* the legal successor to Black Diamond's claims against the A&M Parties: "[b]ecause the claims are property of the bankruptcy estate, the Trustee is the real party in interest." *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001); *accord Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012) (citing *Wieburg* approvingly). As the Court already noted, the Trustee is a "representative of Black Diamond's estate" according to the liquidation plan. *See Sergent*, 472 B.R. at 394. Thus, for the limited purpose of fulfilling her duty to administer and liquidate the causes of action vested in the Trust, the Trustee "stands in the shoes" of Black Diamond, Jones Day's former client. *In re Equaphor Inc.*, No. 10-20490-BFK, 2012 WL 1682583, at *5 (Bankr. E.D. Va. May 14, 2012); *see also In re Crescent Resources, LLC*, 457 B.R. 506, 512 (Bankr. W.D. Tex. 2011) (explaining that litigation trust "is the successor-in-interest to the Debtors"). Whatever one calls the Trustee's relationship to Black Diamond, Jones Day's argument against turnover is equivalent to invoking work-product protection against its own client. *See In re Cardinal Fastener & Specialty Co.*, No. 11-15719, 2013 WL 425858, at *9 (Bankr. N.D. Ohio Feb. 4, 2013) (holding that the trustee "stepped into the shoes of the debtor and is the client" for the purposes of work product).

But attorneys cannot invoke the work-product doctrine against their own clients. Work-product doctrine protects an attorney's litigation materials from discovery to prevent

lawyers from free riding on rival counsel's preparation. *See United States v. Nobles*, 422 U.S. 225, 237 (1975) ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion *by opposing parties and their counsel*." (emphasis added)). This rule "preserve[s] the integrity of the adversarial process." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–14 (1947)). Safeguarding that process is the doctrine's "overriding purpose." *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986); *see also Moody v. IRS*, 654 F.2d 795, 800 (D.C. Cir. 1981) (noting that the doctrine protects neither lawyers nor clients but "the adversary trial process itself" (internal quotation marks omitted)). In light of this rationale, work-product doctrine only shields materials "sought by an adversary of the attorney's client." *Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982). That protection naturally does not cover situations such as this, where a client—here the Trustee standing in for Black Diamond—"seeks access to documents . . . created or amassed by his attorney during the course of the representation." *Id.*; *see also SEC v. McNaul*, 277 F.R.D. 439, 445–46 (D. Kan. 2011).

Jones Day's attempt to block turnover therefore fails. Disclosure of Black Diamond's client file to the non-adverse Trustee creates no penalty for an attorney's diligence and preparation and therefore presents little risk to the adversarial system. *See Foster*, 188 F.3d at 1272 ("When a trustee's interest in a suit does not conflict with a debtor's, there is little reason to worry that sharing work-product will inhibit other attorneys . . . from developing such materials."). Jones Day thus cannot invoke the work-product doctrine as a privilege qualifying the Trustee's right to turnover. *Id.*; *see also* 4 Norton Bankruptcy Law & Practice § 62:7 n.3 ("The work product doctrine protects documents from turnover only if the trustee's interest is adverse to the debtor."). That result is consistent with the views of most

courts addressing this situation in bankruptcy.[6] To hold otherwise would not merely contradict the work-product doctrine's rationale; it would frustrate the Trustee's goal of maximizing the Trust's assets on behalf of unsecured creditors. *In re Am. Metrocomm Corp.*, 274 B.R. 641, 656 (Bankr. D. Del. 2002).

## II. Privilege for Internal Law Firm Documents

In a last ditch effort to defeat turnover, Jones Day asserts its own allegedly exclusive work-product privilege: complete protection for internal firm documents. *See* R. 26-1 at 23. The firm stakes this privilege on state cases recognizing that attorneys may withhold client access "to firm documents intended for internal law office review and use." *Sage Realty*, 689 N.E.2d at 882–83; *see also Swift*, 581 S.E.2d at 39 (adopting *Sage Realty*'s approach). But as already discussed, federal common law defines the privileges limiting turnover under § 542(e). *See Foster*, 188 F.3d at 1264–65. Nevertheless, federal courts often look to the New York Court of Appeals' influential opinion in *Sage Realty* as persuasive authority on the scope of federal privilege. Jones Day's argument still fails for two reasons: (1) *Sage Realty* does not stand for the absolute privilege the firm asserts, and (2) the federal balancing test for recognizing new privileges does not support total protection for internal firm documents. Because the Trustee has demonstrated a need for such documents prepared in the course of Jones Day's representation of Black Diamond, there is no basis in federal law for withholding access in this case. Without access, the Trustee would be unable to impeach

---

[6] *See In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 473–76 (Bankr. M.D. Fla. 2013); *Cardinal Fastener*, 2013 WL 425858, at *8–9; *Equaphor*, 2012 WL 1682583, at *5 (collecting cases); *In re Lomas Fin. Corp.*, No. 95-01235, 1999 WL 33495524, at *4–7 (Bankr. D. Del. June 25, 1999); *Matter of Michigan Boiler & Eng'g Co.*, 87 B.R. 465, 469 (Bankr. E.D. Mich. 1988); *In re Inv. Bankers, Inc.*, 30 B.R. 883, 887 (Bankr. D. Colo. 1983); *In re Kaleidoscope, Inc.*, 15 B.R. 232, 240 (Bankr. N.D. Ga. 1981), *rev'd on other grounds*, 25 B.R. 729 (N.D. Ga. 1982); *In re Calestini*, 321 F. Supp. 1313, 1316 (N.D. Cal. 1971) (under predecessor turnover statute).

the deposition testimony of Jones Day attorney Charles Oellermann regarding the A&M Parties' management of the company. Therefore, no federal privilege blocks the Trustee's right to turnover under § 542(e) of the Bankruptcy Code.

*Sage Realty*'s **Holding:** Although *Sage Realty* is admittedly somewhat ambiguous, read most fairly, the opinion stands for only a modest right of attorney privacy from clients. Openness is the rule and secrecy the rare exception. A client has "presumptive access" to the entire file on the representation. *Sage Realty*, 689 N.E.2d at 882. After all, the client has *paid* for these materials. *Id.* at 883. The normal presumption of access does not apply to internal documents, however, for two reasons: (1) privacy fosters candidness among attorneys, which facilitates "effective and appropriate representation," and (2) internal documents "presumably are unlikely to be of any significant usefulness to the client." *Id.* (internal quotation marks omitted). Nevertheless, as here, when a client can demonstrate a need for internal documents, the justification for withholding them carries significantly less force.

In such cases, the client's needs trump attorney privacy. *See Bolton v. Weil, Gotshal & Manges LLP*, 836 N.Y.S.2d 483, 2005 WL 5118189, at *3–4 (N.Y. Sup. 2005) (requiring turnover of internal firm documents in a legal malpractice case because the presumption that such documents were not useful to the client did not apply).[7] This assumption appears to run throughout the opinion in *Sage Realty*: why else, if not to assess internal documents' usefulness, would the New York High Court instruct trial courts to resolve disputes over

---

[7] *But see In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 347 (S.D.N.Y. 2011) (holding as a matter of New York law that *Sage Realty* and *Bolton* only require client access to internal firm documents in legal malpractice cases).

access after a hearing and *in camera* review? 689 N.E.2d at 883. If Jones Day's categorical reading of *Sage Realty* were correct, this instruction would make much less sense. Treating the client's needs as primary is also most consistent with the lawyer's role as fiduciary. *See* Restatement (Third) of Law Governing Lawyers § 16 cmt. b (2000) [hereinafter "Restatement"] ("A lawyer is a fiduciary . . . ."). The best reading of *Sage Realty*, therefore, is that the client's needs are paramount.[8] So even assuming the case reflects the federal common law of privilege, it does not support Jones Day's effort to block turnover.

**Federal Balancing Test:** Analyzed under federal law, Jones Day's privilege claim faces an uphill climb. The bias in favor of probative evidence is quite strong. *See United States v. Bryan*, 339 U.S. 323, 331 (1950) (recognizing the longstanding principle of Anglo-American law "that the public . . . has a right to every man's evidence"). To warrant federal recognition, a privilege must serve a sufficiently important public interest to overcome "the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (internal quotation marks omitted). Put simply, the interest in privacy must outweigh the public's interest in truth, a quite weighty

---

[8] Federal courts are split, however, over whether *Sage Realty* so holds. *Compare Gruss v. Zwirn*, 296 F.R.D. 224, 228–29 (S.D.N.Y. 2013) (holding that *Sage Realty* provides that a client's demonstrated need for access qualifies an attorney's right to withhold internal firm documents); *McNaul*, 277 F.R.D. at 446 (same); *Polin v. Wisehart & Koch*, No. 00-9624, 2002 WL 1033807, at *3 (S.D.N.Y. May 22, 2002) (same), *with In re Touch Am. Holdings, Inc.*, No. 03-11915, 2009 WL 1393078, at *2 (Bankr. D. Del. May 14, 2009) (holding internal document exception bars turnover of certain documents pursuant to § 542(e)); *M & C Corp. v. Erwin Behr GmbH & Co.*, No. 91-74110, 2008 WL 3066143, at *3 (E.D. Mich. Aug. 4, 2008) (suggesting exception trumps a subpoena); *Lippe v. Bairnco Corp.*, No. 96-7600, 1998 WL 901741, at *2 (S.D.N.Y. Dec. 28, 1998) (holding exception bars creditors' trust access to documents held by debtors' former lawyers). Other courts not discussing or predating *Sage Realty* are similarly divided over a client's access to internal notes and memoranda. *Compare Equaphor*, 2012 WL 1682583, at *5 (holding work-product doctrine does not shield such documents from client); *In re C.W. Mining Co.*, 442 B.R. 44, 47 (Bankr. D. Utah 2010) (reaching the same conclusion because of demonstrated need); *Lomas*, No. 95-01235, 1999 WL 33495524, at *6 (holding work-product doctrine does not protect internal documents); *Resolution Trust Corp. v. H----*, P.C., 128 F.R.D. 647, 649 (N.D. Tex. 1989) (same), *with Land Bank of Jackson v. Fed. Intermediate Credit Bank*, 127 F.R.D. 473, 480 (S.D. Miss. 1989) (holding internal notes and memoranda are not subject to disclosure) *rev'd in part on other grounds by* 128 F.R.D. 182 (S.D. Miss. 1989).

interest indeed. So while federal courts have the flexibility to develop the law of privilege case-by-case, Fed. R. Evid. 501, they are still reluctant to expand existing privileges or recognize new ones. *See Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990); *Herbert v. Lando*, 441 U.S. 153, 175 (1979) ("Evidentiary privileges in litigation are not favored . . . ."). In this case, the scale tips heavily in favor of the public's strong interest in uncovering truth.

To begin with, the benefits of completely shielding internal firm documents from clients are minimal. True, keeping these documents private facilitates effective representation by encouraging frank discussion among attorneys. *See Sage Realty*, 689 N.E.2d at 883. But that does not justify an absolute privilege. A client's need for access to internal firm documents is rare. *Id.* And as already discussed, disclosure to a client (a nonadversary) will not disincentivize zealous representation. *See Foster*, 188 F.3d at 1272. The chilling effect among attorneys of potential disclosure is thus minor, making the marginal benefit of a privilege correspondingly small.

A privilege for internal firm documents also comes with unique costs aside from those generally associated with all privileges: damage to the attorney-client relationship. Withholding from a client documents prepared on billable time—despite the client's demonstrated need—is fundamentally inconsistent with an attorney's fiduciary duties. *See Martin v. Valley Nat. Bank of Ariz.*, 140 F.R.D. 291, 320 (S.D.N.Y. 1991) (collecting cases); *see also* Restatement § 90 cmt. c ("When lawyer and client have conflicting wishes or interests with respect to work-product material, the lawyer must follow instruction of the client."). An absolute privilege would thus increase agency costs, discounting the minimal benefits even further.

Since the benefits are not particularly compelling, "reason and experience" counsel against recognizing the privilege Jones Day claims. Fed. R. Evid. 501. The interests served by a new privilege for internal law firm documents are simply not sufficiently important to overcome the public's strong interest in the search for truth. The Restatement even implicitly recognizes as much. *See* § 46 cmt. c (providing that while lawyers may refuse to disclose to clients certain internal firm documents, courts "may properly order discovery of [such documents] when discovery rules so provide"). As a result, the federal common law of privilege does not block the Trustee's right to turnover under § 542(e).

## CONCLUSION

Accordingly, for the reasons stated herein, the Trustee's renewed turnover motion pursuant to 11 U.S.C. § 542(e), R. 25, is **GRANTED**. It is further **ORDERED** that Jones Day shall **TURN OVER** to the Trustee all documents and records in any medium—paper or electronic—relating to the firm's representation of Black Diamond, including internal communications among Jones Day attorneys, save for purely administrative correspondence.

This the 19th day of March, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge