UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BLACK DIAMOND MINING COMPANY, | ) | |
| LLC, *et al.*, | ) | |
| | ) | Civil No. 7:13-cv-125-ART |
| Debtors, | ) | |
| | ) | |
| _____ | ) | *Electronically Filed* |
| | ) | |
| TAFT A. MCKINSTRY, AS TRUSTEE | ) | |
| OF THE BD UNSECURED CREDITORS | ) | |
| TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IRA J. GENSER, LARRY TATE, AND | ) | |
| ALVAREZ & MARSAL NORTH AMERICA, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' RULE 16 MOTION REQUESTING THAT
THIS COURT FIND THAT KOCH CARBON DID NOT "OFFER" TO PURCHASE ALL
BLACK DIAMOND COAL FROM 2009 THROUGH 2011 UNDER KENTUCKY LAW**

Despite the Trust's arguments to the contrary in its Response [DE 129], the A&M

Parties' Motion regarding Koch Carbon [DE 80] only requests that the Court determine a legal

issue based on the undisputed facts, which the Court acknowledged it can do under Federal Rule

of Civil Procedure ("Rule") 16.  The Motion primarily asks for a narrow determination that the

June 4, 2008 Koch Term Sheet is not a legally binding offer and is based on the plain, undisputed

language found on its face:  ***"[T]his Term Sheet Indication is not intended to impose any***

***obligation whatsoever on either party including without limitation, an obligation to negotiate***

***in any way."***  (Koch Term Sheet, Ex. 1 to Not. of Filing, DE 88-1, p. 2 (emphasis in original).)

Rather than address that disclaimer in any meaningful way, the Trust relies on inadmissible

testimony taken out of context and attempts to confuse and unnecessarily complicate the issue.

1

The Motion does not seek a ruling that the Koch Term Sheet is inadmissible for all purposes or that the A&M Parties cannot be questioned about it.  The Motion only seeks to establish that neither the Koch Term Sheet nor any other communication from Koch constituted an offer under Kentucky law.

Under Rule 16, the Court has "broad authority . . . to distill the issues to be argued at trial. . . . By its own terms, the rule permits participants at a pretrial conference to take action with respect to 'the formulation and simplification of the issues, including the elimination of frivolous claims and defenses.'"  *Smith v. Gulf Oil Co.*, 995 F.2d 638, 642 (6th Cir. 1993) (finding that it was within lower court's authority to preclude plaintiffs' use of belated theories of liability as a matter of law pursuant to Rule 16).  Indeed, Rule 16 in its current form allows the Court to "formulat[e] and simplify[] the issues, and eliminat[e] frivolous claims or defenses."  Fed. R. Civ. P. 16(c)(2)(A).  "Formulation" is designed to

> clarify and confirm the court's power to identify the litigable issues
> . . . in the hope of promoting efficiency and conserving judicial
> resources by identifying the real issues prior to trial, thereby saving
> time and expense for everyone.  The notion is emphasized by
> expressly authorizing the elimination of frivolous claims or
> defenses at a pretrial conference.  There is no reason to require that
> this await a formal motion for summary judgment.  Nor is there
> any reason for the court to wait for the parties to initiate the
> process called for in Rule 16(c)(1).

Fed. R. Civ. P. 16 Advisory Committee Notes, 1983 Amendment (internal citations omitted); *see also Perry v. Creech Coal Co.*, 55 F. Supp. 998, 999-1000 (E.D. Ky. 1944) (Rules 16 and 56, along with other rules, allow courts to narrow litigation to "genuine issues which are material to the case").

Despite this legal authority, the Trust challenges the A&M Parties' use of Rule 16 to determine whether the Koch Term Sheet was an offer.  The Trust first incorrectly argues that the Motion should have been one for summary judgment, but to the extent the determination of an

2

issue is not appropriate for summary judgment under Rule 56, Rule 16 is the proper way to dispose of an issue before trial. (*See* citations *supra*; *see also* Hr'g Tr., Mar. 26, 2014, DE 135, pp. 14:11-15:13.) The Trust also argues that the determination of whether the Koch Term Sheet is an offer is a question of fact, but it is a question of law based on undisputed facts. Thus, the Motion is procedurally proper.

I.      **Determining Whether the Koch Term Sheet Constituted an Offer Is Appropriate for a Rule 16 Motion.**

The Trust has cited cases to argue that the A&M Parties cannot use Rule 16 here to bypass summary judgment. These cases, however, are inapposite.

First, the A&M Parties are not attempting to resolve disputed issues of fact through this Motion. Nevertheless, the Trust relies upon *Fidelity & Deposit Co. of Maryland v. Southern Utilities, Inc.* and *C & A Construction Co. v. DHC Development* for the sweeping proposition that Rule 16 cannot be used to bypass summary judgment. But those cases are not that broad, holding only that a district court may not resolve disputed issues of fact and enter a judgment of dismissal for the defendants pursuant to Rule 16. *Fid. Deposit & Co. of Md. v. So. Utils., Inc.*, 726 F.2d 692, 693-94 (11th Cir. 1984) (triable genuine issue of material fact existed); *C & A Constr. Co. v. DHC Dev.*, 501 F. App'x 763, 771-78 (10th Cir. 2012) (improper to resolve disputed issues of fact and enter judgment in favor of defendants under Rule 16).

Here, the A&M Parties seek to dispose of discrete issues as a matter of law within the case, which courts have the authority to do pursuant to Rule 16. *See C & A Constr.*, 501 F. App'x at 777-78 (district court may use Rule 16 to simplify and narrow the issues for trial); *see also*, *e.g.*, *N. Jackson Pharmacy, Inc. v. Caremark RX, Inc.*, 385 F. Supp. 2d 740, 743 (N.D. Ill. 2005) (ruling on Rule 16 issue-narrowing motion as a matter of law regarding the proper method of analysis for an antitrust claim); *Kohler Co. v. Oasis Indus., Inc.,* 1987 WL 7250, at *5 (N.D.

Ill. Feb. 26, 1987) (resolving four discrete issues within the case as a matter of law pursuant to Rule 16 where facts were not disputed).

Second, the Trust's concern regarding the Court holding a "mini-trial" is unfounded. (Resp., DE 129, p. 10 (citing *C & A Constr.*, 501 F. App'x at 777).)  The court in *C & A Construction* was not referring to every Rule 16 determination as a "mini-trial."  Rather, the district court in that case "resolved highly-contentious factual issues and disputes, in some cases relying on hypothetical assumptions, estimated figures, and disputed methodology, and entered a judgment resolving the entire case, including the amount of damages, over C & A's strenuous objections." *C & A Constr.*, 501 F. App'x at 777.  Here, the A&M Parties are asking the Court to look at one document to determine on its face whether it constitutes a legal offer.[1]

Finally, the Motion does not seek dismissal or judgment on all or part of a claim in the A&M Parties' favor.  *Cf. Fid. Deposit & Co. of Md.*, 726 F.2d at 693-94 (lower court entered judgment for defendants); *C & A Constr.*, 501 F. App'x at 771-78 (same); *VSI Holdings, Inc. v. SPX Corp.*, 2006 WL 568333, at *3-4 (E.D. Mich. Mar. 7, 2006) (seeking dismissal of claims); *Kapsner v. Burlington N. & Santa Fe Ry. Co.*, 2004 U.S. Dist. LEXIS 30060, at *3 (D. Mont. Feb. 19, 2004) (same).  In *VSI Holdings,* the defendant attempted to use Rule 16 to seek a dispositive ruling on claims after dispositive motions and motions in limine were ruled upon. *VSI Holdings*, 2006 WL 568333, at *3.  Even the courts in the Trust's cases, however, acknowledged that Rule 16 provides mechanisms for narrowing issues for trial and can be used for issue identification and elimination prior to trial, which is the relief sought here.[2]  *C & A*

---

[1]  The Motion also seeks a ruling that Koch never offered to purchase coal for the period 2009 to 2011 based on the assertion that Koch never made any such offer orally.  The Trust cites no other communication alleged to be an offer, but instead merely contends the parties had general communications.

[2]  Even if the court considered the Motion as one for partial summary judgment under Rule 56(a) or considered it under Rule 56(g), a ruling in the A&M Parties' favor is warranted because the Trust has failed to come forward with competent evidence identifying a genuine dispute regarding whether the Koch Term Sheet constituted

*Constr.*, 501 F. App'x at 777-78; *VSI Holdings*, 2006 WL 568333, at \*3; *Kapsner*, 2004 U.S. Dist. LEXIS 30060, at \*3.

## II.     Determining Whether the Koch Term Sheet Constituted an Offer Is a Question of Law.

The Trust relies on a number of cases stating that issues of contract formation are questions of fact.  But those cases involved genuinely disputed material facts.[3]  Here, however, and as detailed more fully in Section II, *infra*, the Trust has failed to present any admissible evidence to create a fact question for a jury.  And as the Trust correctly points out, "'[a] determination of an issue of law is presented where the question is one . . . where the relevant facts are undisputed and the dispositive issue thereby becomes the legal effect of those facts.'" (Resp., DE 129, p. 14 (quoting *Cent. Bank v. Gill*, 2013 WL 5436257, at \*4 (Ky. Sept. 26, 2013)).)  In *Charles Distribution, Inc. v. Halliburton*, the Kentucky Court of Appeals held that Kentucky law does not require all questions of contract formation to go to the jury, particularly where, like here, there is "a fact situation that is not disputed in any meaningful way."  2006 WL 1561234, at \*2 (Ky. Ct. App. June 9, 2006) (upholding summary judgment finding no contract formation and distinguishing *Audiovox* and *Hickey v. Glass,* 149 S.W.2d 535 (Ky. 1941)); *see*

---

an offer.  *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986) (nonmoving party must establish existence of genuine issue of material fact to rebut properly supported motion); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("genuine" requires something more than "mere existence of some alleged factual dispute") (emphasis in original); *Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996) ("nonmoving party must present evidence, beyond his pleadings and his own conclusory statements"); *Ellington v. Consol. Biscuit Co.,* 2008 WL 3914982, at \*3-4 (E.D. Ky. Aug. 21, 2008) (granting summary judgment to defendant despite disputed factual issue where significant record evidence rebutted one side of the disputed fact).

[3]     *Audiovox Corp. v. Moody*, 737 S.W.2d 468, 470-71 (Ky. Ct. App. 1987) (conflicting evidence regarding oral agreement); *Ranger Natural Gas, LLC v. Burns*, 246 F. App'x. 953, 964-65 (E.D. Ky. June 21, 2010) (this Court concluding "there remains a material issue of fact" regarding assignment agreement); *Nat'l Info. & Commc'ns Equip. Network Inc. v. Willigan*, 2007 WL 2979928, at \*12-13 (E.D. Ky. Oct. 11, 2007) (conflicting testimony regarding oral agreement created issue of fact for jury); *Gen. Motors Corp. v. Herald*, 833 S.W.2d 804, 806 (Ky. 1992) (fact question existed because "the trial court was presented with sharply conflicting accounts of a sequence of events"); *A & A Mech., Inc. v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 511 (Ky. Ct. App. 1999) (court faced with competing documents and absence of written contract was attempting to determine terms of agreement); *Mead Corp. v. McNally-Pittsburg Mfg. Corp.*, 654 F.2d 1197, 1202-03 (6th Cir. 1981) (same, but decided under Ohio law); *United States v. Hardy*, 916 F. Supp. 1373, 1380 (W.D. Ky. 1995) (involving multiple, competing documents).

*also Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (although mostly analyzing interpretation of oral agreement, Kentucky Supreme Court dispensed with contract formation question where material facts not in dispute).  There is no dispute regarding the language of the Koch Term Sheet, and based on that undisputed evidence the Court may determine as a matter of law that the Koch Term Sheet was not an offer.

**III.    Based on the Undisputed, Admissible Evidence, as a Matter of Law, the Koch Term Sheet Does Not Constitute an "Offer."**

**A.    The Koch Term Sheet Expressly States It Is Not an Offer.**

The Trust defines "offer" in footnote 12 of its Response as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  Restatement (Second) of Contracts § 24 (1981); *see Klein v. Citizens Union Nat'l Bank*, 136 S.W.2d 770, 773 (Ky. Ct. App. 1940) ("An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." (quoting Restatement (First) of Contracts § 32)); *Snow Pallet, Inc. v. Clinton Cnty. Indus. Dev. Auth.*, 46 F. App'x 787, 792 (6th Cir. 2002) (affirming summary judgment on due process claim involving prerequisite finding that no offer existed).[4]

The Koch Term Sheet states on its face that acceptance would not conclude a bargain:

> ***This Term Sheet Indication <u>does not include descriptions of all of the terms, conditions and other provisions that would be contained in any definitive documentation</u> and it is not intended to limit the scope of discussion and negotiation between the parties of any matters.  Moreover, <u>this Term Sheet Indication is not intended to impose any obligation whatsoever on either party</u>***

---

[4]    The Trust also cites *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 964 (6th Cir. 2007), and attaches the bid proposal at issue in that case to support its argument that the Koch Term Sheet was an offer.  (Resp., DE 129, p. 22-23; Cyprus Offer, Ex. 9 to Resp., DE 129-9.)  First, the bid proposal in *Excel Energy* does not contain any disclaimer language like that contained in the Koch Term Sheet.  Further, the case involved a factual dispute regarding what product was being offered in the document, not whether there was a legal offer (an issue which did not appear to be in dispute).  Thus *Excel Energy* is not on point.

> *including without limitation, an obligation to negotiate in any*
> *way.*

(Koch Term Sheet, Ex. 1 to Not. of Filing, DE 88-1 (underline emphasis added).)   Using the

Trust's definition of an offer, any acceptance by the Debtors of the terms in the Koch Term Sheet

would not "conclude" the "bargain."   The document expressly states that it does not impose any

obligation whatsoever, and there are other "terms, conditions, and other provisions" not included

in the Term Sheet that would be necessary to do that.   Thus the express terms of the document

provide it is not an offer, and no further inquiry is necessary or appropriate.

The Trust cites to testimony that Koch continued to discuss with Black Diamond the

possibility of entering into long-term contracts, but the discussions between the parties were just

that—discussions.   (Resp., DE 129, pp. 32-34.)   The Trust cites no evidence that an offer was

made.   Instead, it repeatedly tries to confuse preliminary discussions with legally binding offers.

Simply because the parties' discussions may have eventually led to an offer at some point does

not render every preceding communication a legal offer.   Thus, the Trust has failed to produce

any evidence that Koch made an offer to Black Diamond to purchase coal from 2009 to 2011.

### B.      Other Evidence Cited by the Trust Is Not Admissible.

To avoid meaningfully addressing the plain language of the Koch Term Sheet, the Trust

cites testimony from several witnesses.   This testimony, however, is neither probative nor

admissible and should not be considered by the Court.

### 1.      The A&M Parties Properly Objected to the Speculative Testimony of John Bach and Brad Speer.

The testimony of Brad Speer and John Bach establishes that they do not have personal

knowledge regarding the Koch Term Sheet, and therefore their testimony is inadmissible under

Federal Rule of Evidence ("FRE") 602.   (Mot., pp. 11-14, § II.B.1.)   The Trust fails to cite any

admissible testimony in its Response or to establish foundation for Bach or Speer's testimony.   It

simply recites the same passages addressed in the Motion, which need not be addressed here.

Rather, the Trust argues that the A&M Parties did not object to questions regarding Koch's intent in submitting the Koch Term Sheet to Black Diamond.  (Resp., DE 129, p. 29.) This is incorrect.  In the Bach deposition, the A&M Parties' counsel objected numerous times to the Trust's line of questioning regarding the Koch Term Sheet:

> Q.      So there would have been some--there would have been some discussion about the decision to--to make this offer to Black Diamond, correct?
>
> A.      I would think, yeah.
>
> Q.      Okay.  And would--
>
> MS. FORD:   (Interrupting) OBJECTION.  I'm not sure you've established that it's an offer.
>
> Q.      Well, Mr. Bach, is this an offer from Koch Carbon?
>
> A.      It--
>
> MS. FORD:   (Interrupting) OBJECTION.  He hasn't testified that he has personal knowledge about this particular document.
>
> Q.       In your experience and looking at this document, is this an offer from Koch Carbon?
>
> A.      It looks like one, yes.
>
> MR. MORGAN:  Okay.
>
> A.      It's fairly typical.
>
> Q.      All right.  Do you know or would you know who a potential purchaser of the coal that's looking to be purchased by Koch Carbon would have been at this time?
>
> A.      For that kind of volume--
>
> MS. FORD:   (Interrupting) Same OBJECTION.  He doesn't have personal knowledge about this particular document.
>
> MR. MORGAN:  You can answer the question.

(Bach Dep., DE 36, pp. 49:3-50:9.)   The Trust also omits the A&M Parties' objection to a question that was answered before the objection could be asserted:

> Q.      Okay.  This document contains all of the primary terms for a deal to purchase coal from Black Diamond; does it not?   It includes the price and the quantity and the payment terms, right?

8

> A.      Yes, it does.
>
> MS. FORD:  OBJECTION to form.

(Bach Dep., DE 36, p. 129:19-25 (emphasis added to omitted portion); *compare* Resp., DE 129, p. 24.)[5]   The A&M Parties asserted numerous other objections to questions and testimony regarding the Koch Term Sheet.  (*Id.* at 41:23-43:17, 47:24-48:8, 51:10-11, 129:7-14.)

The A&M Parties also objected numerous times to similar questioning in the Speer deposition.

> Q.      Did you know, in June of 2008, what the profit to Black Diamond would be, generally, if they would have accepted the offer that's identified on exhibit -- on Page 2 of Exhibit 584?
>
> MS. SCARAFILE:   Objection to the form.   Hasn't been any testimony there was an offer and assumes there would have been a profit.

(Speer Dep., DE 49, p. 63:5-11.)

> Q.      If a price in a proposal was offered and accepted on the same day but the proposal did not have a reconfirmation price -- or did not have a expiration date, would you generally have required a reconfirmation or would that be a deal that would be done in your mind?
>
> MR. ARMSTRONG:  Objection to the form.
>
> MS. SCARAFILE:  Objection.
>
> Q.      You can answer if you can.
>
> A.      We would generally include a reconfirmation clause in all of our proposals or, in this case, make it clear that the proposal is indicative and for discussion purposes, even if it was accepted within the same day.

(*Id.* at 54:13-55:1; *see also id.* at 50:12-15, 52:9-21, 53:11-22, 56:6-10, 56:25-57:8, 123:5-10, 131:7-13.)  There was no doubt at either deposition that the A&M Parties objected to questions about the Koch Term Sheet based on lack of personal knowledge and the attempt to elicit legal

---

[5]      The Trust also cites testimony from the Bach deposition out of context.  (Resp., DE 129, pp. 8 n.10, 29.) Immediately following the quoted testimony regarding the Koch Term Sheet, the A&M Parties asked follow-up questions regarding the disclaimer, and Bach testified that there were additional terms to negotiate before reaching an agreement.  (Bach Dep., DE 36, pp. 89:6-91:5.)

conclusions from lay witnesses.

Moreover, even if the A&M Parties did not assert objections to every question regarding the Koch Term Sheet, Rule 32(d)(3) provides that unasserted objections regarding competence, relevance, or materiality of testimony are not waived if the errors could not have been corrected at the deposition.  Like relevancy, which in many instances cannot be cured, Bach and Speer's lack of personal knowledge could not have been corrected.  The Trust was aware that its questioning was objectionable and attempted to correct it, but failed to establish Bach and Speer had personal knowledge because they repeatedly testified they could not remember the Koch Term Sheet.  *See* Fed. R. Civ. P. 32(d)(3)(A); *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 618 (D. Nev. 1998) ("It is difficult to conceive of the likelihood that a question which calls for irrelevant information can be 'cured' by restating the question . . . .").

### 2. The Expert Testimony Cited by the Trust Is Inadmissible Regarding the Issue of Whether the Koch Term Sheet Constituted an Offer.

The Trust cites expert testimony referring to the Koch Term Sheet as an "offer."  The Trust is well aware that the experts (both its own and the A&M Parties' experts) were referring to the document loosely as an offer and were not opining that the document was legally an offer. And even if they had provided any opinion on whether the document was an offer, that testimony would be an improper and excludable legal opinion.  *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("[T]estimony offering nothing more than a legal conclusion—i.e, testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules."); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("It is the responsibility of the court, not testifying witnesses, to define legal terms.  The expert's testimony in this regard invaded the province of the court."); *Ferris v. Tenn. Log Homes, Inc.*, 2010 WL 996737, at *2 (W.D. Ky. Mar. 16, 2010) (expert testimony regarding "legal effect and significance of the purchase

10

agreement is improper"). As such, the Court may not consider the testimony of either party's expert regarding whether the Koch Term Sheet is an offer.[6]

### 3. The Testimony of Cohn and Mullins Is Inadmissible Regarding Whether the Koch Term Sheet was an "Offer."

The Trust also cites lay witness testimony of Carl Mullins, Steven Cohn, and Ira Genser, which is also inadmissible. For the most part, the testimony cited is not even relevant to the issue of whether the Koch Term Sheet was an offer. Carl Mullins never stated that the Koch Term Sheet was an "offer." In fact, he did not remember whether he had any involvement with the Koch Term Sheet:

> Q.    . . . . Do you have any idea whether Mr. Genser ever followed up with Mr. Speer or anyone at Koch about this offer to purchase Black Diamond's estimated coal production?
>
> A.    I don't know what he did and I can't remember.
>
> Q.    He never came to you and talked to you about it, did he?
>
> A.    Or made no such proposal to me.

(Dep. of C. Mullins (Apr. 30, 2013), DE 150, p. 270:6-14.)

Cohn also testified that he did not know or could not recall how he perceived the Koch Term Sheet. (Cohn Dep., DE 41, p. 285:5-6 ("I don't specifically remember it other than my response."); *id.* at 285:19-20 ("I don't remember exactly what I thought. As I sit back here and look at it now . . . .); *id.* at 286:16-18 ("I don't know. This is their offer to purchase all. I don't know whether they would have split it into parts. I have absolutely no idea.").) Thus, when reading his testimony in context, Cohn did not actually testify that he or anyone else considered

---

[6]    Because Bach and Speer admittedly lacked personal knowledge regarding the Koch Term Sheet and Koch's intent for sending it, any testimony by Bach or Speer concluding that the Koch Term Sheet was an "offer" is likewise inadmissible because "non-experts are prohibited from testifying in the form of opinions regarding legal conclusions or matters of law." *Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, 2010 WL 987772, at *2 (E.D. Mich. Mar. 12, 2010) ("Legal opinions, when offered by a non-lawyer lay witness, are both 'incompetent and unpersuasive.'"). Moreover, the testimony only provides that the Koch Term Sheet was consistent with documents Koch sent to other customers that it might have eventually contracted with, but as noted in § III.A, *supra*, the fact that initial communications may lead to an offer at some point does not make them an offer.

the Koch Term Sheet an offer in June 2008.

In addition, Cohn's testimony, like the A&M Parties' expert's, loosely uses the term "offer"—usually in response to the Trust's counsel using the term in the preceding question or the line of questioning—which the Trust distorts as being conclusive that (i) the witness believed it was a legal offer and (ii) that it was a legal offer. (Cohn Dep., DE 41, p. 285:3-15, 286:11-18.) This, as the Sixth Circuit has acknowledged, was a "semantic trap." *United States v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009) (defense counsel's use of a legal word in question to witness "was an attempt to force a fact witness to adopt counsel's legal conclusion, such testimony was both incompetent and unpersuasive").

The Trust also tries to characterize Cohn's testimony as A&M's testimony. While Cohn did answer some of the Trust's questions in his deposition as the Rule 30(b)(6) witness for A&M, he was only designated to testify regarding two narrow topics unrelated to the Koch Term Sheet. (Email from C. Ford to G. Morgan (May 16, 2013, 12:12 p.m.) & Email with Dep. Topics (May 8, 2013, 2:23 p.m.) (designating Cohn for topic 22 regarding A&M's experience working with clients in coal industry and topic 31 regarding Cohn's involvement with A&M's work for Black Diamond), collectively attached as *Exhibit A*.) Otherwise, his testimony was in his individual capacity and not binding on A&M. (Cohn Not. of Dep., AP DE 364.)

The Trust takes the testimony it cited from Ira Genser's 2009 Bankruptcy Rule 2004 exam out of context. The testimony the Trust omitted states that while Genser had "e-mail communications" and "discuss[ed] quantities and prices" with Koch, he could not recall specifics. (Genser Apr. 2009 Exam, DE 59, p. 169:5-21.) When asked whether Koch ever made an offer, he said "I don't see what one side making an offer to the other side – <u>I think when you're discussing them, you know, it's a matter of how you define what offer is</u>. But I think the

12

parties were in communication with looking to try to move that towards a contract." (*Id.* at 170:4-170:11 (emphasis added).)  That testimony is far from an admission by Genser that the Koch Term Sheet was an offer.  Genser was not shown the Koch Term Sheet during this examination, was not questioned about it during his other examinations and depositions, and his testimony cannot be used to define it.

Regardless of admissibility issues regarding authority to bind a party or personal knowledge, Mullins, Cohn, and Genser's testimony is otherwise inadmissible because they are lay witnesses and cannot opine on legal issues.  *Park West Galleries*, 2010 WL 987772, at \*2. As such, the Court should not consider the testimony.

### 4.    Testimony or Documents Regarding American Electric Power Are Not Probative Regarding the Koch Term Sheet.

The Trust improperly relies on documents sent by Black Diamond to another coal company four months after the Koch Term Sheet to establish facts as to Koch.  The AEP discussions have no probative value as to the Koch Term Sheet.  The Trust bases its argument in this regard on the fact that the A&M Parties consider the AEP term sheet an offer (Resp., DE 29, p. 30), but a review of the A&M Parties' pending motions shows that they refer to the document submitted to AEP as a "proposal," but never an "offer."  (*See* Genser Mem. Supp. of Mot. Summ. J., DE 100-1 , pp. 36, 37, 67; *see also* Mem. Supp. of Mot. Summ. J., AP DE 82-1, p. 20 (referring to document as "proposal").)[7]  Any reference to the AEP term sheet as an "offer" has simply been at most a colloquial reference to the document by witnesses, not a legal conclusion or argument by the A&M Parties (which would nevertheless be inadmissible).

Further, the testimony the Trust cites, but does not quote, from James Heller's deposition

---

[7]    The A&M Parties have not relied on the AEP term sheet as being a legal offer, and no court has adopted that position so as to judicially estop the A&M Parties from arguing otherwise. *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (judicial estoppel requires court to adopt prior contrary position); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005) (same).

was expressly disclaimed <u>by Trust counsel</u> from being used to support the legal conclusion that the AEP term sheet was a binding offer. Counsel for the Trust prefaced his question regarding whether the AEP term sheet was an "offer" by expressly stating that he was not asking for a legal conclusion. (Heller Dep., DE 57, pp. 284:21-285:3 ("I'm not asking if it's a binding offer, you can't make that legal conclusion. . . . is it your opinion that this September 29, 2008 Term Sheet Indication for sale of coal to AEP is an offer or not?").) Heller repeatedly testified that the document, like the Koch Term Sheet, was a "Term Sheet Indication" and "not a binding offer." (*Id.* at 284:8-285:25.)[8] In the testimony the Trust cites, Bob Scott also states that he was not sure the AEP term sheet was a binding offer. (Scott Dep., DE 143, pp. 280:19-281:17 (testifying he would need to see document, but not shown to him during cited testimony).)

Accordingly, the Court should disregard the Trust's argument regarding the AEP term sheet because it is not probative regarding the Koch Term Sheet.

## CONCLUSION

The Koch Term Sheet states on its face that it does not obligate either party in any way and that there are other terms that must be negotiated before the parties can enter into a contract, which contradicts the Trust's definition of an offer because Black Diamond's "acceptance" of the terms would not "conclude [the bargain invited]" and therefore could not have resulted in a binding contract. The Trust also fails to cite any admissible evidence of an alleged offer from Koch to purchase coal from Black Diamond from 2009 to 2011. Thus, the Court can dispense with the issue as a matter of law under Rule 16. Accordingly, the A&M Parties request that the Court grant the Motion and find that Koch never made an "offer" to Black Diamond that could have been "accepted" to form a legally binding contract under Kentucky law.

---

[8] After the Trust repeatedly asked whether someone could consider the AEP term sheet an "offer," and not taking "no" for an answer, Heller only testified that "[d]epending on how they define offer, they <u>might</u>." (*Id.* at 285:22-25 (emphasis added).) That does not support the Trust's argument.

Dated:  <u>April 18, 2014</u>                                Respectfully Submitted,

                                                                    /s/ Chacey R. Ford
                                                                    Mary Elisabeth Naumann (KY Bar # 88328)
                                                                    Jay E. Ingle (KY Bar # 86994)
                                                                    Chacey R. Ford (KY Bar # 91019)
                                                                    JACKSON KELLY PLLC
                                                                    175 E. Main Street, Ste. 500
                                                                    Lexington, KY 40507
                                                                    Telephone:  (859) 255-9500
                                                                    Fax:  (859) 252-0688
                                                                    Email:  mnaumann@jacksonkelly.com
                                                                            jingle@jacksonkelly.com
                                                                            crford@jacksonkelly.com

                                                                    John C. Goodchild, III (PA Bar # 74856)
                                                                    MORGAN, LEWIS & BOCKIUS LLP
                                                                    1701 Market Street
                                                                    Philadelphia, PA 19103-2921
                                                                    Telephone:  (215) 963-5000
                                                                    Fax: (215) 963-5001
                                                                    Email: jgoodchild@morganlewis.com

                                                                    *Counsel for Alvarez & Marsal North*
                                                                    *America, LLC, Ira J. Genser, & Larry Tate*

## <u>CERTIFICATE OF SERVICE</u>

On April 18, 2014, I electronically filed the foregoing document through the ECF system,

which will send a notice of electronic filing to the following:

Ellen Arvin Kennedy
ellen.kennedy@dinslaw.com
jennifer.christian@dinslaw.com

Mackenzie Mayes Walter
mackenzie.walter@dinslaw.com
kelly.jordan@dinslaw.com

Grahmn Morgan
gmorgan@dinslaw.com
jane.courtney@dinslaw.com

Matthew Curtis Corcoran
mccorcoran@jonesday.com

/s/ Chacey R. Ford
Chacey R. Ford
JACKSON KELLY PLLC
175 E. Main Street, Ste. 500
Lexington, KY 40507
Telephone: (859) 255-9500
Fax:  (859) 252-0688
E-mail: crford@jacksonkelly.com
*Counsel for Alvarez & Marsal North*
*America, LLC, Ira J. Genser, & Larry Tate*