UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| *In re* BLACK DIAMOND MINING COMPANY, LLC, et al. | Civil No. 13-125-ART |
| TAFT A. MCKINSTRY, *Trustee of the BD Unsecured Creditors Trust*, | **MEMORANDUM OPINION AND ORDER** |
| Plaintiff, | |
| v. | |
| IRA J. GENSER, et al., | |
| Defendants. | |

\*\*\* \*\*\* \*\*\* \*\*\*

Using one word instead of another in a contract can make the difference between success and failure in litigation. So too can defining the word in a particular way. But equally weighty is the choice *not* to include or define a contractual term. As the present dispute over attorneys' fees makes clear, such an omission can upset a party's expectations when default state law gives meaning to undefined terms in a private agreement.

## BACKGROUND

On the eve of filing a bankruptcy plan for the struggling Black Diamond Mining Company, LLC, the Trustee of the BD Unsecured Creditors Trust ("Trustee") signed a short but important contract. In this "Settlement Agreement," the Trustee agreed to reimburse former restructuring specialists Ira Genser and Larry Tate, along with their employer Alvarez

& Marsal North America, LLC ("A&M Parties"), for a portion of their attorneys' fees. R. 11-2 at 2. The reimbursement would occur over the course of a multi-step process: The parties would submit motions disputing fee calculations and then the bankruptcy judge would award a "reasonable" fee. *Id.* ¶ 3. There was just one hitch: The agreement did not define "reasonable."

This oversight proved problematic. Bankruptcy Judge Fulton issued an order interpreting the term "reasonably incurred attorneys' fees" as used in the Settlement Agreement to mean fees calculated using the "lodestar" approach common in federal law.[1] R. 1-2. Under this approach, Judge Fulton factored the customary billing rates of the A&M Parties' attorneys into one of the prongs of the lodestar test. Because the A&M Parties retained a Philadelphia-based law firm, Judge Fulton concluded that a fee based in part on these attorneys' customary Philadelphia-based billing rates was a "reasonable" fee. *Id.* at 7. The Trustee objected to that conclusion and came running to this Court, unhappy with the result of the deal she cut. The Trustee asked this Court to reinterpret the term "reasonable" in a manner that would limit the attorneys' fees that the A&M Parties could collect to amounts calculated using Kentucky-based billing rates. *See* R. 1.

Had the Trustee negotiated a more specific contract, she would not be in this unpleasant bind. But hindsight is 20/20. To resolve this fee litigation, the Court ordered supplemental briefing about how Kentucky courts calculate reasonable attorneys' fees. R.

---

[1] Under the "lodestar" approach, a court should consider the following factors when assessing reasonable attorneys' fees: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989).

2

38; R. 156. The Court also construed Judge Fulton's order as a proposed finding of fact and conclusion of law to review *de novo*. R. 218. Because Judge Fulton used federal law when interpreting the Settlement Agreement, his decision contains a legal error. But this error is slight: Under Kentucky law, trial courts have wide discretion to calculate a "reasonable" attorneys' fee award under a fee-shifting contract.

## DISCUSSION

A federal district court reviews a bankruptcy court's proposed findings of fact and conclusions of law under a *de novo* standard. 28 U.S.C. § 157(c)(1); *Waldman v. Stone*, 698 F.3d 910, 917 (6th Cir. 2012). The Supreme Court recently applied this rule to a district court's review of bankruptcy court decisions on matters involving state law claims designated as "core" by the Bankruptcy Code. *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014). These so-called *Stern* claims, the *Arkison* Court first acknowledged, implicate such fundamental state law "private rights" that they must be resolved by an Article III judge—not by a final judgment from a bankruptcy court. *Id.* at 2168 (citing *Stern v. Marshall*, 564 U.S. —, 131 S. Ct. 2594 (2011)). However, the Court decided that bankruptcy judges could issue proposed findings of fact and conclusions of law to resolve these *Stern* claims, just as they do for non-core claims involving state law. *Id.* at 2173. District courts must then review these proposed findings of fact and conclusions of law *de novo* before adopting them as final judgments. *Id.* at 2170. This process, the High Court held, cured any Constitutional defect associated with a bankruptcy court's ability to hear claims grounded in state law.

This Court previously held that the Trustee's claims against the A&M Parties involved "core" claims. *Sergent v. McKinstry*, 472 B.R. 387, 395 (Bankr. E.D. Ky. 2012).

3

At that time, however, the Court did not determine whether these claims also implicated such "quintessential private rights" under state law such that an Article III judge must resolve them. Subsequently, the Court grew concerned that the claims originating from the Settlement Agreement were, in fact, matters of state law, which bankruptcy courts may not resolve. R. 20 at 10. Accordingly, this Court ultimately withdrew reference from the bankruptcy court over the attorneys' fees dispute. R. 22.

The Court's intuitions were proper: The Trustee's claims against A&M arising from the Settlement Agreement are matters of state contract law. Why? Because the Settlement Agreement is a contract between private parties, and contract interpretation is a matter of state law—even in a bankruptcy proceeding. *In re Martin*, 761 F.2d 1163, 1167–68 (6th Cir. 1985). The dispute over the meaning of terms in the Settlement Agreement is just that kind of "common law cause of action" that a bankruptcy court cannot unilaterally decide as part of a core proceeding. *Stern*, 131 S. Ct. at 2615.

But the A&M Parties protest any review of the bankruptcy court's decision, arguing that the Trustee waived any objection to paying the A&M Parties' counsel at their ordinary billing rate. R. 156 at 4–6. However, this argument lacks merit. The Trustee reserved her right to object to the A&M Parties' attorneys' customary billing rates at the start of the fee disputes with A&M. *See* Objection to Alvarez & Marsal, N.A., LLC, Ira Genser, and Larry Tate's Statement of Fees and Expenses Related to the Motion to Establish Amount of Adequate Security at 2 & n.1, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1914. She exercised this right at the time that Judge Fulton made his decision on the fee calculation issue. *See* Transcript of Hearing Before the Honorable Thomas H. Fulton at 26–33, 49–50, *In re Black Diamond Mining Co., LLC*, No. 08-70066,

4

(Bankr. E.D. Ky. 2009), ECF No. 2208 (objecting to Judge Fulton's decision to allow payment at Philadelphia rates and confirming that it will be a final and appealable order). And she restated that objection in her motion in this Court out of an abundance of caution. R. 1-3 at 2 n.1.

Accordingly, in the face of these multiple objections, and following *Arkison*, this Court reviews *de novo* Judge Fulton's conclusion: That the A&M Parties may collect fees based on their customary Philadelphia billing rates. *See* 28 U.S.C. § 157(c)(1); R. 30; R. 218.

I. **The Bankruptcy Judge Erred by Interpreting the Settlement Agreement Using Federal Law.**

Bankruptcy Judge Fulton concluded that the "reasonableness" of attorneys' fees awarded under the Settlement Agreement should be analyzed under the "lodestar" method typically used to "determine attorney fee awards in the Sixth Circuit." R. 1-2 at 2. Judge Fulton relied exclusively on federal cases interpreting federal common law in support of his conclusion. *Id.* at 2–4.

This approach is improper. Contract interpretation is—and traditionally has been—an issue of state law. *See Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004). Although one Sixth Circuit case suggests in a footnote that the reasonableness of an attorneys' fee award can be analyzed under the "lodestar" method, this opinion is unpublished and thus not binding. *See Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 328 n.6 (6th Cir. 2008). Moreover, *Graceland* conflicts with a longstanding principle in Sixth Circuit law: State substantive law governs contract interpretation, even in bankruptcy proceedings. *In re Martin*, 761 F.2d 1163, 1167–68 (6th Cir. 1985) (concluding

5

that a creditor not otherwise entitled to attorneys' fees under the Bankruptcy Code could collect such fees under a fee-shifting contract governed by state law). The rule holds true even when the contract is part and parcel of the bankruptcy plan. *See In re Dow Corning Corp.*, 456 F.3d 668, 675 (6th Cir. 2006) (holding that courts must use contract principles when interpreting a confirmed bankruptcy plan, "since the plan is effectively a new contract between the debtor and its creditors"). Here, the bankruptcy court adopted the Settlement Agreement as part of the bankruptcy plan. *See* Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Plan of Liquidation at 14, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1562.[2] Accordingly, this court should interpret its terms according to state common law.

Even the parties correctly acknowledge that Kentucky common law principles of contract interpretation apply to this case. *See* R. 38 at 10 (concluding that Kentucky law governs because the agreement involved a Kentucky company, was contemplated to be carried out in Kentucky court, and did not have a contrary venue provision); R. 156 at 2 n.3 (agreeing that Kentucky substantive law determines whether attorneys' fees are "reasonably incurred"). Accordingly, Judge Fulton committed error by applying federal common law and its "lodestar" standard instead of state law to discern the meaning of the term "reasonable" in the Settlement Agreement.

---

[2] Neither party claims that the bankruptcy court can interpret the Settlement Agreement under federal law because it entered an order confirming the bankruptcy plan. In any case, Sixth Circuit precedent forbids this conclusion. *See In re Dow Corning Corp.*, 456 F.3d 668 (6th Cir. 2006) (holding that courts must use state law principles to interpret bankruptcy plan, even after confirmation).

6

## II. Under Kentucky Law, The Reasonableness of Contract-Based Attorneys' Fees Awards Depends on a Trial Court's Discretion.

Whether an award of contract-based attorneys' fees is "reasonable" is a question of law for a trial judge to decide. *Inn-Grp. Mgmt. Servs., Inc. v. Greer*, 71 S.W.3d 125, 129–30 (Ky. Ct. App. 2002) (citing cases). *But see id.* at 130 (determining that the reasonableness of an attorneys' fee award in a contract between a plaintiff *and his own attorney* is a question of fact for the jury). Indeed, the plain terms of the Settlement Agreement contemplate this very arrangement: The contract vests sole authority in the bankruptcy court to act as a trial judge and periodically decide a "reasonable" fee for the A&M Parties' lawyers. R. 11-2 ¶ 3.

But how should a trial judge answer this question of law of what constitutes a "reasonable" fee? The response depends on the subject matter of the underlying dispute. For civil rights cases in Kentucky, trial courts award reasonable fees based on statutes. *See Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992) (using the lodestar method to calculate an award of attorneys' fees in a sex discrimination case). In divorce proceedings, Kentucky trial courts have exercised discretion to award fees. *Boden v. Boden*, 268 S.W.2d, 632, 633 (Ky. 1954). But how do trial courts measure the "reasonableness" of fees like those at issue here, awarded pursuant to a fee-shifting contract between a plaintiff and a non-attorney defendant?

The answer appears in a Kentucky Supreme Court case. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287 (Ky. 1991) (analyzing the reasonableness of an attorneys' fee award made under an installment contract with a fee-shifting provision). In *Capitol Cadillac*, the court held that "it should never be overlooked that any award of an attorney fee

is subject to a determination of reasonableness by the trial court." 813 S.W.2d at 293. The court also found trial court judges to be "in the best position to consider all relevant factors" before awarding a fee. *Id.* Accordingly, the court found that a trial court, in "exercising its discretion," should assess fees after parties "demonstrate that the amount sought is not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred." *Id.*

The touchstone of the *Capitol Cadillac* rule is "reasonableness." And indeed, this is the principle lower courts in Kentucky uphold. *See, e.g.*, *Tomeo v. Rubarts*, 2002-CA-002464-MR, 2003 WL 22872406 (Ky. Ct. App. Dec. 5, 2003) ("If a contract provides for a 'reasonable attorney's fees' without specifying a rate or amount, the amount of the fees to be awarded is left to the discretion of the trial court."); *A & A Mech., Inc. v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 514 (Ky. Ct. App. 1999) (concluding that the amount of an attorneys' fees award is generally within the discretion of the trial court, and that parties must prove the fee request is not excessive and reflects the "reasonable value of bona fide legal services").

The litigants in this case acknowledge the influence of *Capitol Cadillac*. R. 38 at 11; R. 156 at 20. Yet one party reads it too broadly, and the other, too narrowly. The Trustee interprets *Capitol Cadillac*'s reasonableness test to include an additional requirement: She claims the decision commands trial courts to consider in their reasonableness analysis Rule 1.5 of the Kentucky Rules of Professional Conduct. R. 38 at 11 (noting that *Capitol Cadillac* advises courts to give "due regard" to Rule 1.5). This rule, in turn, requires courts to rely on a list of factors when calculating a "reasonable" attorneys' fee, including "the fee customarily charged in the locality for similar legal services" and "the nature and length of

8

the professional relationship with the client." *See id.* From this rule, the Trustee concludes that Kentucky has adopted a lodestar-like approach as part of its reasonableness standard. R. 38 at 11. But the Trustee's reading does not make sense. *Capitol Cadillac* instructed trial courts to consider Rule 1.5 factors when evaluating the reasonableness of contracts awarding a predetermined, maximum attorneys' fee. 813 S.W.2d at 293. This is not the kind of fee at issue here; the Settlement Agreement contemplates attorney compensation through a reasonable hourly rate rather than a reasonable maximum award of attorneys' fees. So it does not make sense to cross-apply the Rule 1.5 factors—used to evaluate whether an *overall fee* is reasonable—to determine whether a particular *hourly rate* is reasonable.

The A&M Parties attempt to limit the reach of *Capitol Cadillac*, arguing that a statute defined the reasonableness of attorneys' fees awarded under the contract in that case. R. 120 at 20 n.16. But the Kentucky Supreme Court used broad language in its decision. "Any award," the court held, is "subject to a determination of reasonableness" by the trial court. 813 S.W.2d at 293. The court first interpreted the plain meaning of the contractual terms, and separately construed a statute with identical language in a manner that preserved the trial court's discretion. *Id.* The court did not limit its holding to trial courts exercising discretion pursuant to a statute: It held trial judges are "generally" in the best position to award fees after considering all relevant factors—not just when they interpret attorneys' fees statutes. *Id.*

### III. The Bankruptcy Judge Properly Concluded That Awarding Attorneys' Fees Based in Part on Philadelphia Billing Rates is Reasonable.

Although Bankruptcy Judge Fulton analyzed the reasonableness of the A&M Parties' attorneys' billing rates using the "lodestar" approach specified by federal law, his ultimate

9

conclusion is consistent with the "reasonableness" test prescribed by Kentucky law. Likewise, after independently reviewing the record, this Court adopts Judge Fulton's conclusion: It is reasonable to pay the A&M Parties' counsel at their Philadelphia-based rates to the extent these rates are comparable to those of other Philadelphia attorneys with similar skill, experience, and reputation.

First, Judge Fulton complied with the procedural element of the *Capitol Cadillac* rule. He allowed both parties ample opportunity to "demonstrate [whether] the amount [of attorneys' fees] sought is not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred." *Capitol Cadillac*, 813 S.W.2d at 293. For example, the Trustee filed a motion with attached exhibits and billing records, totaling 384 pages, contesting the A&M Parties' fee request. Motion Contesting Fifth Fee Statement, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 2199. In response, the A&M Parties filed under seal a response motion with an additional eighteen exhibits. *Id*. Judge Fulton also held a hearing where the parties presented arguments about the reasonableness of the requested fees. *Id.* at ECF No. 2208. And Judge Fulton will continue to consider such evidence as part of the multi-step reimbursement process, because the A&M Parties must submit documents to support a reimbursement request. R. 11-2 ¶ 3 (requiring the A&M Parties to serve a "statement of its requested fees and expenses" before withdrawing fees).

Moreover, the record supports a finding that a fee calculated on the basis of out-of-state billing rates is "reasonable." Filings reveal that both the debtors and creditors retained out-of-state counsel while they negotiated the Settlement Agreement as part of the Third Amended Joint Plan of Liquidation. *See* Findings of Fact, Conclusions of Law and Order

Confirming the Third Amended Joint Plan of Liquidation of Black Diamond Mining Company, LLC and its Affiliated Debtors, As Modified at 98, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009) [hereinafter "Findings of Fact"], ECF No. 1562 (indicating that representatives from the international law firms of Jones Day, Sidley & Austin LLP, and Foley & Lardner, LLP signed the plan on behalf of the parties); *see also* Order Approving the Appearance by Counsel in this Particular Case, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1567 (admitting attorneys from Vinson & Elkins, LLP to appear and participate in the case).

From these arrangements, it was reasonable—if not expected—for the parties in this litigation to retain out-of-state counsel and pay their out-of-state rates. The parties had an opportunity to change this arrangement but chose not to do so: The Settlement Agreement does nothing to restrict the use of out-of-state counsel or limit out-of-state attorney billing rates going forward in the litigation. R. 11-2. The Trustee could have very well included such restrictions or qualifiers in the contract. After all, the bankruptcy court found that the Trustee and the A&M Parties were sophisticated litigants who negotiated the Settlement Agreement at arms' length. Findings of Fact at 16. From their failure to change the established practice by agreement, it is logical to conclude that both the Trustee and the A&M Parties expected to continue paying their chosen counsel at out-of-state market rates—just as they had done to date.

Indeed, the parties' behavior after executing the Settlement Agreement confirms this expectation. In the months after entering the plan, both the A&M Parties and the Unsecured Creditors Committee requested the bankruptcy court to admit additional attorneys from international law firms. *See* Order Granting Motion to Appear Pro Hac Vice, *In re Black*

*Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1644 (admitting attorney John C. Goodchild, III, Esq. from Morgan, Lewis & Bockius to appear before the bankruptcy court); Motion for Admission *Pro Hac Vice*, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1654 (admitting an attorney from Paul, Hastings, Janofsky & Walker LLP to represent an advisor to the unsecured creditors committee). This continued practice of using out-of-state attorneys indicates that the litigants themselves considered it reasonable to continue paying out-of-state rates to their counsel. This Court does not conclude otherwise.

Moreover, the record reveals that the adversary proceeding involves claims against an international restructuring firm for "tens of millions" of dollars. Complaint at 20–21, *McKinstry v. Sergent, et al.*, No. 7:10-cv-00110-ART (E.D. Ky. 2011), ECF No. 1-1. Because the A&M Parties were themselves out-of-state litigants, it is understandable that they might retain out-of-state counsel at out-of-state rates to defend against these claims. Response to Order, Exhibit B at 36–42, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1939-2 (listing attorneys retained from the firm of Morgan, Lewis & Bockius). Their chosen attorneys entered the litigation in October 2009. Order Granting Motion to Appear Pro Hac Vice, *In re Black Diamond Mining Co., LLC*, No. 08-70066, (Bankr. E.D. Ky. 2009), ECF No. 1644 (admitting attorney John C. Goodchild, III, Esq. to appear before the bankruptcy court). At that time, no one objected to the appearance of Philadelphia-based counsel, saying something else was contemplated. Clearly, the Trustee did not have to look far to determine where A&M's counsel were from. And, it is perfectly reasonable for the A&M Parties to want to keep paying the rates required to maintain continuity of counsel with their representatives of more than three years in this

high-stakes case. The nature of the attorney-client relationship provides yet another basis for upholding as "reasonable" a fee award calculated on the basis of the counsel's customary out-of-state billing rates.

As the parties to this litigation reasonably expected that the out-of-state A&M Parties were free to continue to choose their counsel, it is reasonable to uphold an attorneys' fee award based on Philadelphia rates, provided they are commensurate with billing rates of other Philadelphia lawyers of comparable skill, experience, and reputation. *See Fenley v. Fenley*, 2012-CA-000781-MR, 2013 WL 5047387 at *5 (Ky. Ct. App. Sept. 13, 2013) (upholding a trial court's determination of reasonableness when the billing rate matched that of other attorneys of equivalent skill and experience). Judge Fulton reached the same conclusion. R. 1-2 at 7. Accordingly, this Court, having made a *de novo* determination of the facts and legal conclusions, adopts Judge Fulton's ultimate conclusion that using Philadelphia-based billing rates to calculate the A&M Parties' fees is reasonable.

## CONCLUSION

Attorneys' fees litigation should not transform trial courts into "green-eyeshade accountants." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). Yet by asking the Bankruptcy Judge to re-calculate—and this Court to review—a "reasonable" fee award, the Trustee seems to do just that. What the Trustee ultimately seeks through this review process is unclear, because the fee-shifting contract only asks the trial court to assess a "reasonable" fee (and not, say, a "35 percent fee" or a "$225 per hour fee"). The Trustee could have avoided this problem by negotiating more specific terms in the Settlement Agreement. She could have planned to reimburse the A&M Parties' attorneys at a pre-determined reasonable rate. Or she could even have instructed the trial court to use the "lodestar" method to calculate the

13

fee.  She failed to do any such thing.  Accordingly, the Court applies default Kentucky law governing the measurement of reasonable attorneys' fees awarded through a contract.  In doing so, the Court concludes on the basis of a *de novo* review of the record that a fee based in part on Philadelphia hourly rates is "reasonable."

For these reasons, the Trustee's objections to the bankruptcy court's proposed findings of fact and conclusions of law, R. 1, are **OVERRULED**.  While the reasons may be different, the conclusion is the same, A&M's attorneys' hourly rate is reasonable.  The Court thus **ADOPTS** the ultimate conclusion of the Bankruptcy Court.  R. 1-2.

This the 6th day of August, 2014.

Signed By:
*Amul R. Thapar*
United States District Judge